ROBINSON v. MARTIN et al.

(Supreme Court, Appellate Division, First Department.  May 13, 1910.)

1. WILLS (§ 548*)—CONSTRUCTION—TRUSTS—"SURVIVING DAUGHTERS."
    When a will was executed, as at testatrix's death, she had five unmarried daughters, one married daughter, and an incompetent son. In the first clause of the will she expressed the desire that her unmarried daughters, or such of them as desired to live together with the son, should live in one house, directing the executors to keep the house in good repair for their use "during the lives of the two youngest of my daughters who may survive me," and that, if such unmarried daughters should prefer to live elsewhere, a fund should be set apart for the maintenance of another house for them, upon the termination of which trust or abandonment of the house her furniture should be given to her "surviving children in equal shares." The second clause directed that the proportionate part which the son would receive of the estate should be set apart for his support, and gave the share of the son upon his death to her "unmarried daughters." The third clause directed the residuary estate to be held in trust "during the lives of the two youngest of my daughters who may survive me, but not beyond the period of ten years after the date of my death," to pay the income "to my children" except the son, but "should, however, any of my daughters have died leaving lawful issue surviving me," the share of such parent should go to the use of her issue. Upon termination of the trust, the fund itself was given to the children, except the son, the issue of any deceased child to receive the share of the parent. The second clause, as originally prepared, contained the words "surviving daughters," instead of "unmarried daughters," which change was made before execution. Held, that testatrix by the words "surviving daughters," which were changed to "unmarried daughters," intended the daughters who were surviving upon the son's death, and the three daughters who were married after testatrix's death, but before the death of the son, were not entitled to share in the fund.
    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 548.*
    For other definitions, see Words and Phrases, vol. 8, pp. 6825–6832.]

2. WILLS (§ 636*)—CONSTRUCTION—REMAINDERS—DIVESTING.
    If the remainder vested in the then unmarried daughters at testatrix's death, it was subject to be divested by their marrying before the son's death.
    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 636.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WILLS (§ 548*)—CONSTRUCTION—WORDS OF SURVIVORSHIP.
    In construing wills, it is a rule that words of survivorship in bequests of personal property refer to the period of division.
    [Ed. Note.—For other cases, see Wills, Dec. Dig. § 548.*]

4. WILLS (§ 524*)—DISTRIBUTION TO CLASS.
    Where a distribution is to be made among a class, it will be confined to persons who answer the description at the time when the distribution is directed to be made.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1116–1127; Dec. Dig. § 524.*]

5. WILLS (§ 439*)—CONSTRUCTION—EFFECT OF RULES.
    Rules of construction of wills are for the sole purpose of ascertaining testator's intention; and, if that is clearly manifest, it must control.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 952, 955–961; Dec. Dig. § 439.*]

6. APPEAL AND ERROR (§ 1175*)—DISPOSITION OF CAUSE—RENDITION OF JUDGMENT.
    Where the facts are undisputed and incapable of being changed upon another trial, but a wrong legal conclusion was drawn, the judgment may be reversed, and a correct one entered.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

    Ingraham, P. J., and Dowling, J., dissenting.

Appeal from Special Term, New York County.

Action by Caroline M. Robinson against Katherine T. Martin and another, impleaded with others. From an interlocutory judgment construing the will and for an accounting, defendants appeal. Reversed and judgment directed.

Argued before INGRAHAM, P. J., and CLARKE, McLAUGHLIN, SCOTT, and DOWLING, JJ.

Thomas Thacher, for appellants.
Charles H. Beckett, for respondent.

McLAUGHLIN, J. The testatrix, Mary J. Martin, died on the 26th of July, 1896, leaving a last will and testament which was duly admitted to probate and letters testamentary issued to the executor and executrix named, who were also appointed trustees. She was survived by seven children—one son who was an incompetent, six daughters—all unmarried except the eldest. In the second clause of her will she directed that the proportionate share of the son in her estate should be held in trust for his support during his life and then continued:

"Upon the death of my said son I give, devise and bequeath the said share to my unmarried daughters in equal shares."

The son died on the 27th of October, 1908, and at that time all of the daughters were living, but only two remained unmarried; three having married after the death of the testatrix. The trustees were of the opinion that the two daughters who were unmarried at the time of the death of the son were entitled to the share which had been held in trust for him. This action was brought by one of the daughters, who had married intermediate the death of the testatrix and the son, for a construction of this provision of the will; she claiming that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under it the share belonged to the five daughters who were unmarried when the testatrix died, and for an accounting. The trial court sustained her contention, and from an interlocutory judgment to this effect, and directing an accounting, this appeal is taken by the two unmarried daughters.

The sole question presented is whether the testatrix intended to give the share held in trust for the son to the daughters who were unmarried after death, or to those who were unmarried at the death of the son. After a careful consideration of the whole will, I am unable to agree with the conclusion reached by the trial court. It seems to me that the language used indicates unmistakably an intention on the part of the testatrix that the share of her estate given in trust during the life of the son should upon his death go to the daughters who were then unmarried. As originally prepared, the will, in the provision quoted, contained the word "surviving," which the testatrix, before execution, struck out and substituted in its place the word "unmarried." Had the will been executed as originally prepared, it seems to me clear that the testatrix would then have intended to give the share to the daughters surviving at the time of the son's death; for not only is it a rule of construction that words of survivorship in bequests of personal property refer to the period of division (Teed v. Morton, 60 N. Y. 502; Matter of Smith, 131 N. Y. 239, 30 N. E. 130, 27 Am. St. Rep. 586; Schlereth v. Schlereth, 173 N. Y. 444, 66 N. E. 130, 93 Am. St. Rep. 616), but in other portions of the will the testatrix was careful to use the words "surviving me" or "who may survive me" when she meant the persons surviving her. The only other place in the will where the word "surviving" is used alone is in the first clause, where she directed her executors and trustees to maintain a home for such of the unmarried daughters as might wish to live together, and, if at any time it should cease to be practicable to maintain such a home, they should divide her furniture, etc., among "My surviving children in equal shares." It cannot well be doubted that in this clause she meant the children who were surviving when the division was made, and I think it also follows that, when she later used the words "surviving daughters," she had in mind the daughters who were surviving upon the son's death; otherwise, there could be no reasonable explanation of her using in other places in the will the words "surviving me" or "who may survive me." It seems to me, therefore, when she substituted the word "unmarried" for the word "surviving," she had in mind the same period of time of distribution and intended to give the share to the daughters who were unmarried at that time. I have reached this conclusion from a consideration of the whole will. It was executed in April, 1894, and at that time, as upon her death, there were five unmarried daughters. In the first clause of the will she expressed her desire that her "unmarried daughters or such of them as desire to live together with my son" should live in one household, and for this purpose she directed the executors and trustees to keep her house, with all its furnishings, in good repair for their use, "during the lives of the two youngest of my daughters who may survive me, but only so long as any of my daughters remaining single

may choose to make it their home"—a fund being reserved for that purpose. She further provided that, if such unmarried daughters for any reason should prefer to live elsewhere, a fund should be set apart under the same conditions for the maintenance of such other home for them, and upon the termination of the trust, or the abandonment of such home, her furniture, pictures, etc., should be given to her "surviving children in equal shares" as before stated. The second clause of the will—the construction of which is here under consideration—directed the executors and trustees to set apart for the support of the son "the proportionate part which he would receive of my estate, in view of the number of my children who may survive me, and of my children who may have died before me leaving lawful issue me surviving," giving the share upon the death of the son to her unmarried daughters. The third clause of the will directed that the residuary estate be held in trust "during the lives of the two youngest of my daughters who may survive me, but not beyond the period of ten years after the date of my death" to pay the income in equal shares "to my children," except the son, "should, however, any of my daughters have died leaving lawful issue surviving me, then I direct my said executors and trustees to apply the share of said income which would have gone to the parent" to the use of her issue. Upon the termination of the trust the fund itself was given to the children, except the son, the issue of any deceased child or children to receive the share of the parent.

It is quite apparent, therefore, that the testatrix intended to make special provisions for her unmarried daughters, but in this connection it was urged that since, when the will was executed, the eldest daughter was married to a man of large means, she must have had in mind the five daughters then unmarried, and desired to give them for that reason a larger proportion of her estate, to the exclusion of the eldest daughter. The other five daughters were then of marriageable age, and any or all of them, so far as the testatrix knew, might marry equally as well or better than the one already married. Their ages ranged from 19 to 31, and the provisions of the will quoted indicated that the testatrix fully appreciated the possibilities that some of them might marry before her death, for she made provisions in both the second and third clauses, in case any of her daughters should die before her, leaving lawful issue, that then and in that event the issue should take, and that some of them might marry after her death, as clearly indicated by the provision of the will for the maintenance of the house "only so long as any of my daughters remaining single may choose to make it their home." There is nothing in the will, so far as I am able to discover, to indicate an intent to discriminate against the eldest daughter, except in so far as special provision was made for those who might remain unmarried—unmarried, not at the time the will was made, or at the time of her death, but at the time the trust fund became available for distribution.

This interpretation is not in conflict with any rule of construction, for it has frequently been held that, where a distribution is to be made among a class, it will be confined to persons who answer the descrip-

tion at the time when the distribution is directed to be made. Matter of Crane, 164 N. Y. 71, 58 N. E. 47; Matter of Allen, 151 N. Y. 243, 45 N. E. 554; Matter of Baer, 147 N. Y. 348, 41 N. E. 702; Delaney v. McCormack, 88 N. Y. 174; Teed v. Morton, supra. But, if it were, the same result would follow if the conclusion is correct as to the testatrix's intention. Rules of construction of wills are for the sole purpose of ascertaining the intention of the testator, and, if that is clearly manifest, it must control. Roosa v. Harrington, 171 N. Y. 341, 64 N. E. 1; Matter of Tienken, 131 N. Y. 391, 30 N. E. 109.

It may be assumed, as contended by the respondent, that upon the death of the testatrix the remainder vested in the then unmarried daughters, but it was subject to be divested by their marrying before the death of the son. Lyons v. Ostrander, 167 N. Y. 135, 60 N. E. 334; Weymann v. Weymann, 82 App. Div. 342, 81 N. Y. Supp. 959; Flanagan v. Staples, 28 App. Div. 319, 51 N. Y. Supp. 10. Three of them did marry, and by so doing their interest became divested, and the same vested in the two unmarried daughters, who are entitled to the trust fund.

It follows that the married daughters have no interest in the trust estate. The facts being undisputed and incapable of being changed, upon another trial, the interlocutory judgment should be reversed, and one entered in accordance with the views above expressed, and the accounting should proceed.

CLARKE and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). I do not concur with Mr. Justice McLAUGHLIN in his disposition of this appeal.

The testatrix executed a last will and testament on the 27th of April, 1894. She then had one son unmarried and six daughters, all over 21 years of age, except Anna, who was 19 years of age. She was the owner of a house, 27 West Thirty-Second street, in the city of New York, and, in addition to that, had a considerable estate; the whole estate amounting to about $500,000. The son was of feeble mind and unable to care for himself, and she evidently wished to provide a home for him and for her unmarried daughters. By the first subdivision of the second clause of the will, to accomplish this purpose, she expressed her wish that her unmarried daughters or such of them as desired to live together with her son, should live in one household, whether at her present home, or elsewhere, and directed her executors and trustees to keep the house 27 West Thirty-Second street, New York, in good repair and condition, and to pay any taxes or assessments which might be a charge against the property and to leave in said house the furniture and other property therein at the time of her death for the use of her said unmarried daughters and for her son during the lives of the two youngest of her daughters who should survive her, but only so long as any of her daughters remaining single may choose to make it their home, and further directed her executors and trustees to reserve out of her personal estate a fund not exceeding $20,000, the net income of which should be applied to the payment of the expenses connected with this house.

This clause shows that the testatrix had in mind the fact that she had unmarried daughters and the contingency of their subsequent marriage. She wished to provide a home for her son and for her unmarried daughters so long as they should remain unmarried, and thus expressly provided that, upon the marriage of any of her daughters who should be unmarried at the time of her death, her right to occupy the house should cease upon marriage. To confine the use of her house to her unmarried daughters, and to exclude therefrom a daughter married either before or after her death, this provision was inserted. She therefore considered the contingency of the marriage of one or more of the daughters after her death, and provided that the right to use the house should terminate upon the marriage subsequent to her death of any of her said daughters. Then, by the second paragraph of this clause of her will, she directed her executors and trustees to set apart out of her estate a share thereof for the benefit of her son John. This provision was to take effect at the time of her death. The executors were directed to hold this share in trust during the life of John, and to pay to John or to apply to his use, support, and comfort, from time to time, in their discretion, so much of the net income thereof as might be in their judgment necessary for his proper comfort and support. The will as originally drawn, provided that, upon the death of her said son John, the said share held in trust was given to her surviving daughters in equal shares. As she had seven children living at the time of her death, she, by this paragraph, disposed of one-seventh of her estate. She applied that share for the benefit of her son John during his life, and upon his death, she gave the share to her surviving daughters, share and share alike. The whole share was thus disposed of, and futurity as to the disposition of the property was nowhere expressed. The words used were words of present gift. There was no indication of an intent to postpone the vesting of the estate, but it clearly was to vest upon the death of the testatrix in the trustees for the life of John and the remainder in her surviving children. The share of each daughter surviving the testatrix would thus have vested in each daughter, and one-sixth of the one-seventh of her estate which constituted this trust fund would have belonged absolutely to each daughter, the possession to be postponed until the termination of the trust for John's benefit. This seems to me clear so that it does not require authority for its support. The later cases of Bergmann v. Lord, 194 N. Y. 70, 86 N. E. 828, and Stringer v. Young, 191 N. Y. 157, 83 N. E. 690, are, however, directly in point. When the will thus prepared was presented to the testatrix for execution, she directed that in place of the word "surviving" there should be inserted the word "unmarried," so that the provision read:

"Upon the death of my said son, I give, devise and bequeath the said share to my unmarried daughters in equal shares."

There was no change in the other phraseology of the clause; the evident intent being to confine the remainder of this trust fund to those of her daughters who were unmarried, rather than to those who survived. The words were still words of present gift, and the remain-

der of this trust fund was presently disposed of. Those sharing in it were to be her unmarried daughters. The bequest and devise was by the testatrix, and it was not a case of a class among which the trustees were to divide the property upon the termination of the trust, but a present gift of a remainder to her unmarried daughters; and, as was said by the Court of Appeals in Matter of Smith, 131 N. Y. 239, 30 N. E. 130, 27 Am. St. Rep. 586, the construction of these words is the same as if the testator had named each of her unmarried daughters in place of using the words "to my unmarried daughters in equal shares."

There is no intention that the vesting should be postponed until the time of distribution, and, the share having vested, there is no intention that it should be divested by reason of either the death or marriage of any daughter during the continuance of the trust. It seems to me obvious that upon the death of the testatrix the remainder in this share vested absolutely, and that neither the death nor marriage of one of the daughters who was unmarried at the death of the testatrix would divest a share which had vested in each unmarried daughter on the death of the testatrix. That this is the construction of this clause of the will appears from the principle applied by the Court of Appeals in Matter of Baer, 147 N. Y. 352, 41 N. E. 702. There the trustees were directed upon the termination of the life estate to convey the remainder to children and lawful heirs of the testator's brother Harmon, deceased, share and share alike per stirpes. There the duty was imposed upon the trustees to distribute the remainder, when the trust terminated by the death of the life tenants, among the children and lawful heirs of the deceased brother, and it was indicated quite clearly that the testatrix did not intend that the remainder should vest upon her death in the then surviving children and heirs of her brother, but should be postponed until the time of division and distribution arrived; the court placing its decision upon the ground that there was not in the devise any direct or immediate gift to the children or heirs of the brother, but a direction that the trustees should convey to them at a future time on a certain contingency. It was a case in which futurity was annexed to the substance of the gift, so that survivorship at the time of distribution was an essential condition to the acquisition to an interest in the subject of the gift; but, in this case, there was a present gift of a remainder to the testatrix's unmarried daughters, and no duty devolved upon the trustees to distribute the trust estate upon the death of the life beneficiary. The third paragraph of this clause of the will provides for the distribution of the rest, residue and remainder of her estate. There had been first set apart a house for the use of her son and unmarried daughters so long as they should remain unmarried and one-seventh of her estate for the use of her son John, to be held for his benefit during his life, with a remainder over to her unmarried daughters in equal shares; and the rest, residue, and remainder of her estate was to be invested by her trustees during the lives of the two youngest of her daughters who might survive her, but not beyond a period of 10 years after the date of her death, the income from which was to be paid in equal shares to her children, ex-

cepting her said son John, and, upon the expiration of the said period of 10 years or sooner termination of the said trust, she gave, devised, and bequeathed the trust estate to her children, other than her said son John, in equal shares per stirpes and not per capita, the issue of any deceased child or children to receive the share which the parent would have received if living. Here, again, is a present gift to all of her six daughters, the enjoyment of the principal being postponed for a period of 10 years, unless sooner terminated by the death of her two youngest daughters; and I assume that it would not be questioned but that this remainder vested absolutely on the death of the testatrix, and would not be divested by the death of either of her children, except where a child should die leaving issue, in which case the issue would take the parent's share. It seems to me that the whole will is consistent with but one construction, and that is that the remainder given in each of the second and third paragraphs of this clause of the will vested upon the death of the testatrix and was not divested by either the subsequent death or marriage of any of her daughters except in the one contingency expressed in the third paragraph of this clause of the will by which the share of a daughter dying leaving issue was to pass to the issue.

I think, therefore, the court below was right, and that the judgment appealed from should be affirmed.

DOWLING, J., concurs.