WILLIAM E. BLOODGOOD et al., as Executors of and Trustees under the Will of THOMAS LEWIS, Deceased, Respondents, *v.* FANNIE D. LEWIS, Individually and as Administratrix of THOMAS LEWIS, Deceased, et al., Respondents, and KINGS COUNTY TRUST COMPANY, as Executor of and Trustee under the Will of MARY E. LEWIS, Deceased, Appellant.

**Will — codicil — construction thereof — effect of codicil changing testamentary provision for daughters of testator.**

1. A codicil does not usually supersede the will as would an after-made will. Its purpose is to alter, explain, qualify or revoke the will in the respects it defines. It is a part of the will, and the two are to be read and executed as one entire instrument.

2. The will of Thomas Lewis gives his entire residuary estate, real and personal, to trustees during the lives of testator's two daughters, Rosetta and Mary, and the life of the survivor, in trust, to receive the entire income from it, to pay out of the income for designated purposes, and to " divide, distribute and pay over " the residue of the income " to my two daughters and my two sons Thomas and John A. Lewis, in equal shares, parts and proportions, that is to say, one equal fourth part to each of them. Provided, however, if my said daughter Mary Elizabeth Lewis shall continue to be of unsound mind or incapable of managing her own affairs, of which my daughter Rosetta E. Lewis shall, during her lifetime, be the sole judge, then, and in such case, so long as the said Mary Elizabeth shall, in the judgment of said Rosetta, continue of unsound mind or incapable of managing her own affairs, the share of the rents and income of my said daughter Mary Elizabeth, which would otherwise be payable to her, shall be paid by my executors and trustees to my said daughter Rosetta, to be applied by her in the care and comfort of my said daughter Mary Elizabeth during such period of unsoundness or incapacity." *Held,* that this has the meaning and effect of giving to Mary absolutely the equal fourth part of the residue of the income qualified as to the manner of payment and enjoyment.

3. By a codicil the trustees are to divide and distribute and pay over one equal fourth part to each of the children, but with the qualification or limitation upon the payment to Mary that the trustees shall pay over to Rosetta in their discretion " so much of the

income of said trust for my daughter Mary Elizabeth as may be required for her comfortable care and support" so long as they judge Mary incompetent. This qualification empowered the trustees to determine, in their discretion, how much of the one-fourth equal part bequeathed to her should be expended for her benefit, and made them custodians and conservators of the unexpended balance, as was Rosetta under the will. It was not intended to and did not revoke or abrogate the disposition to Mary, and it left the donee and the gift unchanged.

*Bloodgood* v. *Lewis*, 146 App. Div. 86, reversed; 151 App. Div. 941, modified.

(Argued April 28, 1913; decided June 17, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 19, 1912, which affirmed a final judgment of Special Term in an action to procure a settlement of the accounts of the executors and trustees under the will of Thomas Lewis, deceased, and to obtain a judicial construction of certain provisions thereof, bringing up for review a prior order of the said Appellate Division, entered July 18, 1911, reversing an interlocutory judgment of Special Term.

The facts, so far as material, are stated in the opinion.

*George V. Brower* and *William P. Maloney* for appellant. The will and codicil gave the whole of the income of one-fourth of the estate to Mary; the question of whether she was of unsound mind or not is immaterial. (*Quincy* v. *Rogers*, 9 Cush. 291; *Redfield* v. *Redfield*, 126 N. Y. 466; *Clifford* v. *Taylor*, 204 Mass. 358; *Dougherty* v. *L. F. I. Co.*, 183 N. Y. 302; *Cuyler* v. *Wallace*, 183 N. Y. 291; *Alcock* v. *Davitt*, 179 N. Y. 9; Code Civ. Pro. § 2333; *Fox* v. *Fox*, L. R. 19 Eq. 286; *Smith* v. *Parsons*, 146 N. Y. 116; *Barbour* v. *De Forest*, 95 N. Y. 13.)

*Henry H. Man* for plaintiffs, respondents.

*Otto Horwitz* and *Walter J. Rosenstein* for Fannie D. Lewis, individually and as administratrix of the estate of

Thomas Lewis, deceased, et al., defendants, respondents. It was the testator's clear intention, as deducible from his will and codicil, that his daughter Mary should never be intrusted with nor entitled to dispose of any part of the one-fourth share of the income from his residuary estate so long as in the judgment of the executors she was of unsound mind or incapable of managing her affairs. (*Robinson* v. *Martin*, 200 N. Y. 159.) The surplus income over what was expended by the trustees for the benefit of Mary E. Lewis during her lifetime passes to those presumptively entitled to the next eventual estate. (*Sherman* v. *Skuse*, 166 N. Y. 345; *Ellingwood* v. *Beare*, 59 How. Pr. 503; *Craig* v. *Craig*, 3 Barb. Ch. 76, 93; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Russell* v. *Hilton*, 80 App. Div. 178; *Kilpatrick* v. *Johnson*, 15 N. Y. 322; *Cook* v. *Lowry*, 95 N. Y. 103; *Mills* v. *Husson*, 140 N. Y. 99; *Meldon* v. *Devlin*, 31 App. Div. 156; *Embury* v. *Sheldon*, 68 N. Y. 227; *Gilman* v. *Reddington*, 24 N. Y. 9; *U. S. Trust Co.* v. *Soher*, 178 N. Y. 442.)

*Joseph H. Choate, Jr.*, and *Thomas T. Sherman* for John A. Lewis et al., defendants, respondents. The surplus income above the sums paid over by the trustees for the care and support of Mary Elizabeth Lewis was undisposed of by the will. The testator intentionally so limited his provision for her as to entitle her, in the event which happened, to nothing more than the benefit of the expenditure by her sister Rosetta of such sums as the trustees in their discretion deemed sufficient for her comfortable care and support. (*Newcomb* v. *Webster*, 113 N. Y. 191; *Sherman* v. *Skuse*, 166 N. Y. 345; *Russell* v. *Hilton*, 80 App. Div. 178; *Ellingwood* v. *Beare*, 59 How. Pr. 503; *Craig* v. *Craig*, 3 Barb Ch. 76; *Bryan* v. *Knickerbocker*, 1 Barb. Ch. 409; *Twopeny* v. *Peyton*, 10 Simon, 487; *Lord* v. *Bunn*, 2 Y. & C. [N. R.] 98.) The accumulated surplus passed, under the statute, to the persons presumptively entitled to the next eventual

7

estate. (*Cook* v. *Lowry*, 95 N. Y. 103; *Manice* v. *Manice*, 43 N. Y. 303; *U. S. Trust Co.* v. *Soher*, 178 N. Y. 442.)

COLLIN, J. The ultimate question presented to us for determination is: Did the will of Thomas Lewis give his daughter, Mary E. Lewis, the one-quarter part of the income of a trust fund created under it, or did it give her a mere right to have so much of the one-quarter as might be required for her support and comfort paid to her sister Rosetta to be so applied. The question springs from the fact that the trustees under the will had at the death of Mary E. Lewis a large sum which they accumulated from the one-quarter part during her life, through paying to Rosetta 'for her benefit less than the whole. The appellant, as the executor and trustee under the will of Mary, claims this unexpended sum as a part of her estate. The defendants, respondents, claim it as undisposed of by the will of Thomas Lewis, deceased, or as illegally accumulated by the trustees and, therefore, passing to them under section 63 of the Real Property Law.

The will of Thomas Lewis was probated January 25, 1892. The eighth paragraph created the trust. It gives the entire residuary estate, real and personal, to trustees during the lives of testator's two daughters, Rosetta and Mary, and the life of the survivor, in trust, to receive the entire income from it, to pay out of the income for designated purposes, and to "divide, distribute and pay over" the residue of the income "to my two daughters and my two sons Thomas and John A. Lewis, in equal shares, parts and proportions, that is to say: one equal fourth part to each of them. Provided, however, if my said daughter Mary Elizabeth Lewis shall continue to be of unsound mind or incapable of managing her own affairs, of which my daughter Rosetta E. Lewis shall, during her lifetime, be the sole judge, then, and in such case, so long as the said Mary Elizabeth shall, in the judgment of said Rosetta, continue of unsound mind or incapable of man-

aging her own affairs, the share of the rents and income of my said daughter Mary Elizabeth, which would otherwise be payable to her, shall be paid by my executors and trustees to my said daughter Rosetta, to be applied by her in the care and comfort of my said daughter Mary Elizabeth during such period of unsoundness or incapacity." Rosetta was one of the three persons appointed executors and trustees.

A codicil executed after the lapse of more than two years after the execution of the will provided:

"WHEREAS, in and by the Eighth clause of said will I did provide that my daughter Rosetta E. Lewis should be the sole judge as to whether my other daughter Mary Elizabeth Lewis should be at any time thereafter of unsound mind or incapable of managing her own affairs, and did impose upon the said Rosetta the duty of exercising such judgment and discretion, and I did also direct that in case in the judgment of said Rosetta, my daughter, Mary Elizabeth, should continue of unsound mind or incapable of managing her own affairs, that then the share of the rents and income of the trust estate created by my will which would otherwise be payable to said Mary Elizabeth should be paid by my executors and trustees to the said Rosetta to be applied by her to the care and comfort of said Mary Elizabeth during such period of unsoundness or incapacity, and I being now unwilling to impose upon said Rosetta, by reason of her feeble state of health, the duty of judgment in regard to the mental condition of her sister, do hereby revoke and annul so much and such parts of my said will as impose the said duty upon the said Rosetta, and in place thereof I do hereby provide that the said duty of judgment and discretion as to the mental condition of the said Mary Elizabeth at any time hereafter shall be exercised by the trustees for the time being of the trust estate by said will created, who, in case the said Mary Elizabeth shall, in their judgment, be at any time of unsound mind or inca-

pable of managing her own affairs, shall pay over, in their discretion, so much of the income of said trust for my daughter Mary Elizabeth as may be required for her comfortable care and support to my said daughter Rosetta, whom I request to assume the duty of the application of such moneys received by her to the use of the said Mary Elizabeth for the purpose of insuring her comfortable care and support."

It revoked the executorships of Rosetta and another, appointed their successors and concluded: "and in all other respects, except as by this codicil changed or altered, I do republish the said will."

Within the judgment of the trustees, Mary was continuously, until her death on May 23, 1909, of unsound mind and incapable of managing her own affairs, within the meaning of the will and codicil, and the trustees, in consequence of such determination, retained and safely kept sums of money derived from the income of the trust estate, which would otherwise have been paid to her. The Special Term, by an interlocutory judgment, adjudged that the defendant Kings County Trust Company, as executor of and trustee under the will of Mary E. Lewis, deceased, was entitled to the payment to it by the plaintiffs of the accumulations of income of the trust by said will created in her favor. The Appellate Division, upon the appeal of the brothers and sister of Mary, reversed the interlocutory judgment in so far as it adjudged as above stated and directed the distribution of the accumulated income between the sister and the brothers. (*Bloodgood* v. *Lewis,* 146 App. Div. 86.) The appeal here is from the final judgment rendered, in accordance with the order of the Appellate Division, after taking and stating the accounts of the trustees, and brings up for review the interlocutory judgment and the order reversing it.

The will is drawn with care and understanding. The language is intelligible and precise. At the outset, at

least, the safe and practical method in seeking to ascertain the intention of the testator is to adhere to the ordinary sense and meaning of the words which he used. The provision " and the residue of such rents, issues and profits (of the real estate) and the whole of the net interest, dividends and income of my residuary personal estate, quarter yearly, (the trustees are) to divide, distribute and pay over to my two daughters and my two sons Thomas and John A. Lewis in equal shares, parts and proportions, that is to say: one equal fourth part to each of them " has the indisputable meaning and effect of giving to Mary the equal fourth part of the residue of income precisely and as absolutely as it gave to each of the other three children an equal fourth part. Discussion need not delay us at that point. The immediate language following does not destroy or make conditional the provision. It is true that the word "provided " is apt and suitable to create a condition. Yet it is equally well settled that it does not necessarily import a condition, and is often used by way of limitation or qualification only, especially when it does not introduce a new clause, but only serves to qualify or restrain the generality of a former clause. (*Chapin* v. *Harris*, 90 Mass. 594.) The language is simple and the intention and effect, as expressed, clear. The direction to pay to Mary the one equal fourth part bequeathed to her has the qualification or restriction that so long as she continued, in Rosetta's judgment, incapable of managing her affairs, her one-quarter should be paid to Rosetta to be applied by her for Mary's benefit; and in case Mary outlived Rosetta and continued incapacitated, the remaining trustees should thus apply Mary's share. It did not affect the completeness or the absoluteness of the disposition or the giving of the one equal fourth part to Mary. The disposition was made by it neither conditional nor contingent. The duty of the trustees to divide and distribute the residue of the income in four equal shares and pay them over was not mitigated or altered by it. It

incorporated in and as part of the duty that the share of
Mary should be paid to Rosetta for Mary instead of to the
latter, so long as Rosetta judged her incapacitated. It
must be paid over, however, and as "the share of the
rents and income of my said daughter Mary Elizabeth,
which would otherwise be payable to her." The words
"which would otherwise be payable to her" made clear
and emphatic that the "one equal fourth part" of the
residue was the share of Mary and the share to be paid to
Rosetta for her benefit. There is no inconsistency between
those words and the disposition of the share to Mary.
The direction to pay it to Rosetta did not make her
the donee of it nor place it in intestacy. Even as
the direction to pay it to Rosetta, as given in the will, did
not bequeath it to Rosetta, the withdrawal of the direc-
tion to pay to Mary while she was incompetent did not
nullify the gift to her. Compliance with the direction
segregated the one-quarter from the estate and beyond
the provisions of the will. It may well be that the tes-
tator intended to secure to Mary through her life, in this
share, suitable resources and conditions for living, and to
protect her against the improvidence and unwisdom
accompanying mental derangement. The intrusting the
care, expending and application of it to Rosetta, as pro-
vided in the will, did not make it her property or give to
the trustees a discretion as to how much should be given
the *cestui que trust*. It placed the share of Mary in the
conservation and control of Rosetta while she deemed her
mentally incompetent. This did not impeach or revoke
the bequest. (*McCune* v. *Baker*, 155 Penn. St. 503.)
Regarding only the language of the original will, and
confining ourselves to ascertaining the intent of the
testator, by giving an exact and just meaning to the
words used, we conclude there is an absolute disposition
of the one equal fourth part of the residue income to
Mary, qualified as to the manner of payment and enjoy-
ment as already stated. This conclusion is in accord

with the other provisions which related to or concerned Mary.

We turn now to the codicil. In considering it, certain rules are to be recalled. A codicil does not usually supersede the will as would an after-made will. Its purpose is to alter, explain, qualify or revoke the will in the respects it defines. It is a part of the will, and the two are to be read and executed as one entire instrument. It may revoke a prior gift, either expressly or by an inconsistent and repugnant disposition. An express revocation in one particular negatives, by implication, an intention to alter it in any other respect and an indubitable disposition in the will is not impliedly revoked by the codicil unless its repugnant provision is likewise indubitable, and then only in the precise degree and to the precise extent of its repugnancy. (*Taggart* v. *Murray*, 53 N. Y. 233; *Pierpont* v. *Patrick*, 53 N. Y. 591; *Austin* v. *Oakes*, 117 N. Y. 577; *Wetmore* v. *Parker*, 52 N. Y. 450; *Redfield* v. *Redfield*, 126 N. Y. 466; *Viele* v. *Keeler*, 129 N. Y. 190; *Crozier* v. *Bray*, 120 N. Y. 366.)

The codicil states by way of recital, with unmistakable clearness, the effect of the eighth provision of the will in the particular of the bequest to Mary; that it made Rosetta sole judge as to the mental incapacity of Mary, directed the payment to Rosetta, during the incapacity, of the share which would otherwise be payable to Mary, to be applied to the care and comfort of Mary, and declares an unwillingness to impose upon Rosetta by reason of her feeble health " the duty of judgment in regard to the mental condition of her sister," and following thereupon the testator did "revoke and annul so much and such parts of my will as impose the said duty upon the said Rosetta, and (it proceeded) in place thereof I do hereby provide that the said duty of judgment * * * shall be exercised by the trustees, * * * who, in case the said Mary Elizabeth shall, in their judgment, be at any time of unsound mind, or incapable of managing her

own affairs, shall pay over, in their discretion, so much of the income of said trust for my daughter Mary Elizabeth as may be required for her comfortable care and support to my said daughter Rosetta, whom I request to assume the duty of the application of such moneys received by her to the use of the said Mary Elizabeth for the purpose of insuring her comfortable care and support." There is, it will be observed, an express revocation of the qualification or restriction attached in the original will to the disposition to Mary, but there is no express revocation of the bequest. There is a new qualification or restriction substituted for that imposed by the will. The expressed revocation negatives, by implication, an intention to revoke the bequest. Moreover, the qualification or restriction substituted is not repugnant to the bequest. The trustees are still to divide and distribute and pay over one equal fourth part to each of the children, but with the qualification or limitation upon the payment to Mary that the trustees shall pay over to Rosetta in their discretion " so much of the income of said trust for my daughter Mary Elizabeth as may be required for her comfortable care and support," so long as they judge Mary incompetent. This provision of the codicil is not so inconsistent with the disposing one of the will that the two cannot stand together. Under it the trustees, instead of Rosetta, were to judge Mary's mental condition and determine the sum of the income to be paid Rosetta for her comfortable care and support. It did not empower the trustees to determine, in their discretion, what her share of the residue income should be or how much was bequeathed to her. It empowered them, rather, to determine, in their discretion, how much of the one-fourth equal part bequeathed to her should be expended for her benefit, and made them custodians and conservators of the unexpended balance, as was Rosetta under the will. In fine, it is the qualification or restriction upon the disposition to Mary expressed

in the will, with the trustees substituted for Rosetta, except that Rosetta still is to apply the required moneys to the care of Mary. It was not intended to and did not revoke or abrogate the disposition to Mary. It left the donee and the gift unchanged.

The conclusion already stated makes unnecessary a discussion of the assertion of the appellant that the question here presented is *res adjudicata* in its favor under the judgment of 1894 in an action between the trustees as plaintiffs and the children of Thomas Lewis as defendants. The assertion is based upon the provisions in that judgment, to the effect, that the trustees were bound to determine from time to time the mental condition of Mary and during her incompetency to pay over to Rosetta as directed, and in such case to retain and safely keep all the balance of the income of such trust. Two reasons refute appellant's assertion; the one, the question as to whom the balance retained and safely kept belonged was not expressly litigated and determined nor comprehended and involved in the things expressly stated and decided in the action; the other, the provision itself is not more favorable to the appellant than the respondents. Under it the latter could claim the balance with as much authority and justification as the former.

The order of Appellate Division reversing the interlocutory judgment of the Special Term should be reversed and interlocutory judgment of the Special Term affirmed. Final judgment of the Appellate Division and the Special Term modified so as to award the sum found distributable under said judgment to the appellant The Kings County Trust Company, to be held upon the trust in accordance with the provisions of the will of Mary Elizabeth Lewis, with costs in all courts payable to all parties appearing and filing briefs in this court.

CULLEN, Ch. J., WERNER, WILLARD BARTLETT, HISCOCK, CHASE and HOGAN, JJ., concur.

Ordered accordingly.