In the Matter of the Estate of HERMAN LITTMAN, Deceased.

Surrogate's Court, New York County, October 28, 1937.

*Charles A. Strauss [Henry W. Unger* and *Charles A. Strauss* of counsel], for the Manufacturers Trust Company, as executor, etc., petitioner.

*Andewelt & Hershson,* for Julia Littman, legatee.

*Davis, Polk, Wardwell, Gardiner & Reed,* for the St. John's Guild.

*Cadwalader, Wickersham & Taft,* for the New York Association for Improving the Conditions of the Poor and for the Bide-a-wee Home Association, Inc.

*Arnstein & Levy,* for the Lebanon Hospital Association of the City of New York.

*Wolf & Kohn,* for The Home for the Aged, etc.

*John T. Magan,* for the New York Foundling Hospital.

*Koenig, Bachner & Koenig,* for the Beth Abraham Home for Incurables.

FOLEY, S.   In this accounting proceeding the trustee petitioned for the judicial settlement of its account and for the construction of the terms of the will by the surrogate in so far as they affect the scope of the discretion and the authority of the trustee to apply or to pay the income to Julia Littman, one of the beneficiaries of the residuary trust.   She is a sister of the decedent.   Since the year 1901 she has been confined almost continuously in various correctional institutions and asylums for the treatment of those suffering from mental ailments.   The testator, with knowledge of her deficiencies of mind, executed his will on June 24, 1927.   He died on October 5, 1929.

In paragraph fourth of his will, which disposed of the residue, he directed that a certain part of the fund be held in trust and paid to his sister Julia Littman during her life.   These general directions by the testator were modified and limited, however, by the special directions of paragraph tenth in language as follows: "·I direct the trustees to apply so much of the income payable to Julia Littman as may be necessary for her support and maintenance as long as she remains an invalid and the inmate of an asylum or sanitarium for demented persons, or if the executors and trustees deem she is unable to care for herself.   Should she at any time recover her reason, and be able to properly manage and care for herself and her property, which facts shall be determined by certificate of the authorities of the asylum or institution of which she was last an inmate, and further, by a majority of three physicians to be named and designated by my executors and trustees, then my trustees are to pay to her during her natural life, in equal quarter-yearly install-

ments the income of such trust created for her benefit. Such direct payment of income to her at any time to be discontinued, in case said beneficiary should again become mentally incompetent or an inmate of any institution or sanitarium, and in this event, my trustees are again to apply the income of such trust estate for the support and maintenance of said beneficiary."

On a prior accounting the resignation of two of the executors and trustees was accepted and they were discharged from further duty in the trust. The Manufacturers Trust Company continues to function as the sole remaining executor and trustee.

In 1920, during the decedent's lifetime, Julia Littman was committed as an incompetent, by formal proceedings in the Supreme Court of the county of New York, to the Rivercrest Sanitarium in the borough of Queens, New York city. She remained there for some years. She was transferred later to the Long Island Home, a private sanitarium in Amityville, Long Island, where she remained as a patient until the early part of the year 1937. She was then discharged by an order of the County Court of Suffolk county from the custody of the institution and from further imprisonment under the original commitment. That order was made as the result of a writ of habeas corpus obtained in her behalf. The trial of the issue of her mental competency was had before the court and a jury, which recommended by their advisory verdict her unconditional release.

During the period of the trust in which she was confined as a patient in the two institutions, the cost of her maintenance was paid by the trustees and by the continuing sole trustee. Since her release the trustee has applied the income to the cost of her accommodations for board and lodging at a hotel in this city and for her other living expenses. Her net income from the trust exceeded the cost of maintenance to the extent that at the time of the settlement of the last account in 1935 there was undistributed income in the hands of the trustee in the sum of approximately $9,000. During the subsequent period of about two years, which is covered by the present accounting, an additional $1,000 of undistributed income has accrued, making a total of approximately $10,000 now in the hands of the trustee.

In the pending proceeding the beneficiary, Julia Littman, demands the payment of the entire amount of accrued income. She also asserts that she is entitled to the direct payment of the total net income which shall hereafter be earned upon her trust fund. She further contends that the adjudication of the County Court of Suffolk county that she is not an insane person is conclusive upon the trustee. That it nullified the terms of the will and terminated any

discretion vested in it to apply the income to what its officers considered to be her needs for support. The trustee, on the other hand, stands upon the terms of the will. It contends that the testator vested the widest discretion for the protection of the beneficiary. Its counsel argues further that the order of release of the County Court could not in any way impose a duty upon the trustee to *pay* rather than to *apply* the income and that the discretion conferred by the will may only be modified under the formula of procedure for the determination of mental capacity to manage her affairs, which was laid down in paragraph tenth by the testator quoted above.

The contentions of the beneficiary are overruled and her application for the payment to her of the amount of unpaid income or of future total net income is denied. In so far as they affect the interests of Julia Littman, the terms of the will were drawn with precision and foresight by the testator. He knew his sister's unfortunate condition and her long record of confinement in various institutions. She was a special object of his solicitude. He intended in every possible way to provide for her comfortable support, but at the same time planned to guard her against her own improvidence or against the imposition of designing persons. The broadest powers were given to the trustees by paragraph tenth to apply " so much of the income " as may be necessary for her support and maintenance so long as she remained an invalid and the inmate of an asylum or sanitarium or " if the executors and trustees deem she is unable to care for herself." The testator himself defined what he meant as the tests of her incapacity by his further statement that should she at any time recover her reason " and be able to properly manage and care for herself and her property " the trustees might pay the total net income to her after a method which he fixed for the determination of her mental strength and her capacity to care for herself and her property. A return to a condition of incapacity was foreseen and provided for. An additional formula of action for the trustees was outlined by the testator in the event that the beneficiary should again become mentally incompetent or an inmate of an institution. In such event the mandate was changed again from a direction to pay to a direction to apply. The draftsman plainly knew the technical distinction between these two legal forms of distribution of the income of testamentary trusts. (*Matter of Connolly*, 71 Misc. 388.)

Where the will directs the payment of income to a beneficiary, the duty imposed by the testator is mandatory. Where the provision is to apply the income for the support or education of an infant, an incompetent or even a competent person, discretion is vested in the trustee and the responsibility is placed upon him for

the proper application of the income to the support of the beneficiary. Here, under the terms of the will, the trustees were not required to pay or even expend the total income, but the amount needed for the support of the beneficiary was to be determined in their sound judgment.

In the ordinary case, where a will vests discretion in a trustee or other person to apply the income of a trust or part of it to the care and support of a beneficiary, the courts will not interfere with the exercise of the discretion. (*Ireland* v. *Ireland*, 84 N. Y. 321; *Hamilton* v. *Drogo*, 241 id. 401, 404; *Matter of Flood*, 127 Misc. 797; affd., 243 N. Y. 598; *Matter of Hilton*, 174 App. Div. 193; *Matter of Shea*, 234 id. 176; *Matter of Cowen*, WINGATE, S., 148 Misc. 35.)

Where bad faith, abuse of discretion, arbitrary action, fraud or diversion of the income to improper purposes on the part of the trustee is shown, judicial action may be exercised.

There are exceptions to these rules where the courts may act when the will is silent as to who shall determine the amount necessary for the support and comfort of the beneficiary, or when the right to use a part of the principal is made dependent upon his requirements. These authorities were reviewed by Judge HUBBS, in *Matter of Martin* (269 N. Y. 305) and by Surrogate WINGATE in *Matter of Gatehouse* (149 Misc. 648). These precedents, however, have no application here, because no right to invade the principal was given and the discretion to apply was confined to income, and further because such discretion was vested specifically in the named trustees, or any of them who continued to function.

In the pending proceeding neither bad faith nor fraud on the part of the trustee has been urged as a ground for the substitution of judicial review or action. Until such grounds are proven, the law will leave the beneficiary where the deceased left her, to convince her trustee that her claim for additional support is reasonable. (*Matter of Hilton, supra.*) The demand of the beneficiary is not for a larger allowance, but for the entire unpaid balance of the total net income, which is asserted as a matter of right. The terms of the will and the pertinent rules of law negative the existence of such an enforcible right.

The surrogate is of the opinion that the order releasing her in the habeas corpus proceeding is not conclusive upon the trustee and did not terminate the right to exercise its discretion. The terms of the adjudication contained in the order were that the beneficiary had conducted herself in a manner " not detrimental to the public welfare," nor " injurious to herself " in the period of months between her temporary release on the issuance of the writ in October, 1936, and January 3, 1937, and that the beneficiary was not an insane

person. The mandate of the testator in the will was not founded upon whether or not she was insane. He did not authorize a judicial determination as to sanity or insanity, competency or incompetency. He made the basis for the exercise of the discretion by the trustees to pay her directly her " ability to properly manage and care for herself and her property." There are many persons who are not legally insane or incompetent who may be restricted by a testator from receiving the entire income of a trust fund. In such cases the testator lawfully may place in a fiduciary or other person the right to determine whether the *cestui* is incapable of managing his or her affairs by reason of improvidence or mental deficiency, or any other cause whatsoever. (*Hamilton* v. *Drogo*, 241 N. Y. 401.)

The testimony of the alienists upon the trial of the habeas corpus proceeding justifies the action of the trustee in refusing to recognize her as being capable of managing her own property. These experts, including two who testified in her behalf, were of the opinion that she was in the early part of 1937 mentally immature and mentally deficient. Moreover, the report of an eminent psychiatrist separately employed by the trustee to examine the beneficiary shows that she is mentally deficient, a moron with a mental age of a child of eight or nine years, and is totally incompetent to care for her affairs.

It appears from the account that the net income from the trust was approximately $3,100 per annum. The average expenditures for the support of the beneficiary have been $2,600 per annum. Aside from my finding that the discretion vested in the trustee as to the amount to be applied is free from judicial control, it would appear that the beneficiary has been amply provided for and her requirements for support in her station in life have been met by the trustee.

The will contains no violation of the statutory prohibition against accumulation of income. (Pers. Prop. Law, § 16; Real Prop. Law, § 63.) It has been repeatedly held that where discretion is vested in a trustee to apply the income, the retention of part of it by the trustee does not constitute a void accumulation. The unexpended balance always continues to be the property of the beneficiary and at his or her death passes by will or intestacy. (*Bloodgood* v. *Lewis*, 209 N. Y. 95, revg. 146 App. Div. 86, and modfg. 151 id. 941; *Hamilton* v. *Drogo*, 241 N. Y. 401, 404; *Hill* v. *Guaranty Trust Co.*, 163 App. Div. 374.) The *Bloodgood* case is of interest in the pending situation because of the almost exact parallel of the facts. In that case there was a vesting of discretion in the trustees. In that case, too, there was a judicial determination that the beneficiary was not incompetent. Despite this adjudication the trustees continued to expend within the exercise of their judgment and uncontrolled by judicial restraint, a sum sufficient for support and to accumulate the unexpended balance.

In answer to the further questions of construction presented to the court, the following directions will be given: For the reasons already stated, and because of the discretion vested in the trustee, a hearing on the capacity of Julia Littman to manage her property is not justified and will not be ordered by the surrogate. The trustee shall continue to apply the income for her support and maintenance. The trustee may provide sums by way of cash advancements to her for her incidental expenses.

The trustee may, at reasonable intervals, set into operation the method of determining the competency of the beneficiary to manage and care for herself and her property laid down by the testator in that paragraph. Under that formula of procedure, a certificate must be obtained from the physician in charge of the institution " of which she was last an inmate." Her condition at the time of discharge is not controlling. A new examination of the beneficiary is required by the terms of the will. If his present opinion is that she is not capable, no further steps need be taken by the trustee. If such physician determines that she is capable, the testator has also required that three physicians be designated by the trustee for the purpose of examination of the beneficiary and report by them. If a majority of such three is of the opinion that she is capable, the trustee is authorized to pay the total accruing income to her and the amount of any unpaid accrued income. If such majority is of the opinion that she is not capable, the trustee shall apply the income and accumulate the unexpended balance.

Under the terms of the will I hold that the testator intended that certification of mental capacity by the physician of the last institution, plus a certification by a majority of the three physicians selected by the trustee, was requisite before the direction to pay income becomes effective. The two findings of capacity must concur. A determination of incapacity to manage her affairs by the physician of the last asylum or institution, or by a majority of the physicians, will necessarily lead to a denial of the right of the beneficiary to be paid the income directly and to a continuation of the control of the expenditure of the income by the trustee in its discretion. The objections to the account are overruled.

Submit decree on notice construing the will and settling the account accordingly.