## LUTHER BROWN *et al.*

### *v.*

## JAMES H. RIGGIN *et al.*

1. WILL—*mental capacity of testator.* If a testator, at the time of making a will or codicil thereto, is capable of attending to ordinary business and of acting rationally in the ordinary affairs of life, the will or codicil will not be set aside for the want of sufficient mental capacity. And although the testator, about the time of making the will, may at times have been unconscious from disease, yet if he made the same when conscious of what he was doing, and on

his recovery makes one or more codicils thereto, the last several years after making the will, this will be a republication and adoption of the will subject to the changes made by the codicil.

2. Where a party made a will and afterwards made two or three codicils thereto, all of which were duly attested, it was held error to instruct the jury, on a contest of the will and codicils, so as to require them to find the testator capable at the several times when the instruments were executed. If the jury was satisfied of his capability at any one of the times, they should have been instructed to find the act then done and the preceding acts valid.

3. SAME—*test of mental capacity.* On the contest of a will for mental incapacity, the question of capacity involves the simple inquiry whether the testator was or was not, at the time of making the will, able to understand and reasonably transact the ordinary business of life—whether he was able to buy and sell, collect accounts, and did he understand the business in which he was engaged. But inability to transact business from physical weakness does not of itself incapacitate one from making a will.

4. An instruction to the jury, on the trial of a contest of a will for mental incapacity in the testator, is erroneous if it assigns more weight to the testimony of nurses and attendants than to the opinion of the subscribing witnesses. The jury and not the court must judge of the weight to be given to each part of the proofs in the case.

5. The proof of periodical epileptic attacks attended with convulsions, loss of consciousness and the usual sequences of such attacks, or proof of temporary pneumonia supervening such attack, with fever and delirium, is not such proof of insanity or lunacy as will justify an instruction based upon the presumption of its continuance.

6. PARTIES—*to bill contesting will.* On a bill in chancery, under the statute, to contest the validity of a will, all the legatees and devisees in the will are necessary parties, and a decree taken omitting such necessary parties will be reversed.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a bill in chancery, filed by James H. Riggin, an insane person, by his next friend, Ignatius Riggin, to the September term, 1875, against Luther Brown and Robert Allyn, executors of the last will and testament of Elizabeth M. Riggin, impleaded with Edward B. Riggin and others, to contest the validity of the will and testament and three several codicils thereto.

Several persons were made parties defendant as legatees, but on some process was not served, and as to them the bill was afterwards dismissed. As to some others, no rule to answer was taken, and no answer was filed and no default taken.

At the April term, 1877, the court ordered an issue to be made up whether the writings purporting so to be, were the will and codicils or not of the said Elizabeth M. Riggin, and a jury being sworn to try the issues, found that they were not the will and codicils of the said Elizabeth M. Riggin.

A motion for a new trial was made and overruled. A decree was rendered upon the verdict and appeal by consent taken to the Central Grand Division.

The seventh instruction referred to in the opinion is to the effect that when insanity or lunacy is once established to have existed, the presumption of its continuance arises until rebutted by proof, the burden of which lies on the party alleging a restoration or lucid interval, and that if the jury believe from the evidence that the papers in question were executed after insanity has been proved, then it is incumbent on the parties insisting on the validity of the will to show to the satisfaction of the jury that the testatrix was sane at the time of making of said will and codicils respectively.

Messrs. G. & G. A. KŒRNER, for the appellants:

Where a will has been produced and the execution thereof proved by the attesting witnesses, the proof of insanity is thrown on the contestants, and they must prove insanity by a preponderance of testimony. *Lilly* v. *Waggoner*, 27 Ill. 395.

If the mind of a testator is sufficiently sound to understand the nature of a will and the subjects and objects of his disposition, the will is valid. 1 Jarman on Wills, 51; *Trish* v. *Newell*, 62 Ill. 205; *Meeker* v. *Meeker*, 75 id. 267.

A will and codicil are to be read as made at the same time and incorporated, and a codicil republishes the will and makes it the same date as the last codicil, and makes the will to speak from the date of the codicil, if the latter refer to it

in such a way that there can be no doubt of its identity. 1 Williams on Exors. 178, and n. 2 and 3.

In this case the codicil refers to the will and former codicil, so that even if the testatrix was insane when the will was signed by her, the subsequent codicils, if made when sane, republish the will and must stand.   1 Rich. S. C. 80, and note to page 178; 1 Williams on Exors. 184, note m and 2.

The partial impairment of mind by age and disease does not disqualify a person from making a will.   1 Williams on Exors. 16; *Meeker* v. *Meeker,* 75 Ill. 267; *Rutherford* v. *Morris,* 77 id. 412.

Dr. Allen may have encouraged a bequest to the college, so did Mr. Blair, as the evidence shows; and even if they had persuaded hard,—urged vigorously a donation for a noble institution,—they would, under the decisions of our courts, have been perfectly justified.   *Rutherford* v. *Morris,* 77 Ill. 412.

There was a want of necessary parties.   The legatees, leaving out the college, had an interest in the question to the amount of more than $16,000.   This proceeding is subject to the rules governing in chancery, and the court will take notice of the omission of necessary parties defendant.   *Prentice* v. *Kimball,* 19 Ill. 320; *Hassit* v. *Ridgley,* 49 id. 197; *Ryan* v. *Lynch,* 68 id. 160.

Mr. JEHU BAKER, also for the appellants.

Messrs. GILLESPIE & HAPPY, for the appellees:

In regard to the point raised for the first time by appellants' brief that the bill was dismissed as to certain legatees— Elizabeth Raney, Caroline Yercum and Mary A. Rogers—we insist they were not necessary parties, being fully represented by the executors.   They were legatees to small sums of money.

As to the personalty, the courts have invariably held that the executor or administrator fully represents the creditors, distributees and legatees, who, as to all orders, judgments and decrees, are in privity with the personal representatives of

the testator or intestate. *Stone et al.* v. *Ward,* 16 Ill. 177; *Rallston* v. *Wood,* 15 id. 168; *Gray* v. *Gillilan et al.* id. 454; Freeman on Judgments, sec. 319 a, and authorities there cited.

The proper mode of raising the objection that all the parties interested in the cause are not before the court, when that appears on the face of the bill, is by demurrer. *Denniston et al.* v. *Hoagland,* 67 Ill. 265.

The authority for the seventh instruction is in the case of *Menkins* v. *Lightner,* 18 Ill. 284, which refers to 2 Greenl. Ev. sec. 371; *Jackson* v. *Van Dusen,* 5 Johns. 154; *Grabil* v. *Barr,* 5 Pa. State, 441. The same doctrine is found in Ray's Med. Juris. of Insanity, 416.

In considering the verdict of the jury in this case the court will be governed by the same rules that obtain in cases at common law. *Meeker* v. *Meeker,* 75 Ill. 260.

At law, unless the verdict of the jury is manifestly against the weight of evidence, it will not be disturbed. *Allen* v. *Smith,* 3 Scam. 97; *Ellis* v. *Locke,* 2 Gilm. 459; *Evans* v. *Fisher,* 5 id. 572; *Dawson* v. *Robbins,* id. 72; *Mann* v. *Russell,* 11 Ill. 586; *Weldon* v. *Francis,* 12 id. 460.

The policy of the English courts was to sustain wills, for the reason that the English laws of descent were unjust. Our laws of descent, on the contrary, are just, distributing one's property equitably, and hence the policy of our courts should be rather against than in favor of wills, sustaining them only where they are clearly established to be the free and deliberate act of a sound and disposing mind.

Mr. JAMES M. DILL, also for the appellees.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Testatrix died in July, 1875, being about sixty-nine years of age and a widow, leaving as her heirs at law the insane son in whose behalf the bill is filed, then in an asylum, and a grandson, who is made defendant, but against whom no decree has been taken.

It appears, from the evidence, that the deceased was an intelligent and cultivated woman, in apparent good health, being strong and robust, though of nervous temperament, with some tendency, as one of the witnesses says, to congestion of the brain; but she is generally spoken of as a woman of gifted and brilliant mind, and in vigorous physical condition previous to the 14th of November, 1868. On that day, at the age of sixty-two, she was attacked, while at her domestic labors, with a severe epileptic fit,—as one of the witnesses, a physician, thinks, with an apoplectic complication, involving a brain lesion. But from the whole testimony, there does not appear to have been any paralysis or other exhibit of serious apoplectic complication. While the fit lasted she was unconscious, but during the night her consciousness was restored, and on the following day she was able to give an intelligible account of her disease, and of the manner in which she was taken.

An attack of pneumonia supervened the epileptic convulsions, superinduced, as was supposed, by the application of ice to the head; and this attack was accompanied with high fever with occasional delirium, during which she would be unconscious or incapable of rational conceptions; and her condition was that of a person in extreme illness, though the witnesses immediately about her person, summoned on both sides, concur in saying that while occasionally out of her mind, at other times she was rational and intelligent, the mental condition being plainly the usual condition of delirium attendant on high fever. But no witness, either expert or other, fixes her condition as one of settled loss of reason at or near that period.

On the 23d of November, 1868, she made the will. It seems to have been prepared by Allyn, one of the executors named, who was a neighbor and friend. On its being brought to her, she sat up in bed and stated that it was her last will and testament, and signed it in the presence of the attesting witnesses, one of whom testified, and the other had died before the testatrix.

The witness testifies that at that time "she was perfectly in her mind and knew just what she was doing,—that she answered questions with perfect intelligence," and there is no sufficient testimony to shake this statement. All the testimony (except some not very satisfactory opinions of persons not experts) may well be true, and yet this account of this intelligent condition of the testatrix, at the time of the execution of the will, remain unshaken.

On the 9th of December, 1868, she made the first codicil, which was attested by the witness above mentioned, who had attested the will, and who testified at the trial. It was also attested by the husband of this witness and by another. These three witnesses concur that at that time, to use their language, she was sane and knew what she was doing. One of the witnesses says she talked cheerfully, and they had quite an exchange of language before testatrix signed the codicil, and she understood herself as correctly as any person could. Another of the witnesses says she was lying on the bed and told him it was no house contract (he was a house builder and they had previous contracts). At her request these two witnesses then signed as attesting witnesses the will which she then republished.

No witness is introduced by the contestants to contradict her then condition as testified to. The most that can be said of the assailing testimony is, that the testatrix about this time was ill—sometimes better—sometimes worse—rational sometimes for moments or hours, then flighty—and when affected by the epileptic spasms, unconscious—and when under suffering from fever, delirious. But inasmuch as it is positively proved by several witnesses that, at the particular time of executing the will and republishing it by the codicil, she was neither unconscious nor delirious, but both conscious and rational, this testimony should prevail, for thereby all the testimony may be harmonized.

On the 19th of October, 1870, she made a second codicil, which was attested by two yet other subscribing witnesses.

One of them says she was sitting up in the parlor at the time—in the forenoon; that she said to him, "this codicil contains my wishes," and she wished him to sign it as a witness. This witness testifies to her sanity at that time; and he further testifies that she was perfectly sensible at all times when he saw her, except on one occasion, which he described. The other witness to this codicil is equally clear on the question of her capacity at that time. And we look in vain in the testimony of the contestants for any contradiction of these positive statements, which reach to the very heart of this controversy.

The last codicil is made August 11, 1873, and this is attested by still two other subscribing witnesses, and both of these concur in strong, positive statements. At that time, Mrs. Riggin was sitting up, and said she was glad to settle the business and get it off her mind. One of the witnesses inquired if she understood what she was doing, and she said she did; that she advanced or paid to the church the legacy intended for it, and wanted to cancel it. One of these witnesses says she was not then in as good condition as before, but that she understood the business she was engaged in. He was a physician; had known her for forty years; had seen her a number of times when, by reason of the epileptic attacks, she was incompetent, but at other times she was rational, and at this time was capable of understanding what she did,—and this is the usual fluctuating conditions of persons afflicted with epilepsy.

The testimony of the subscribing witnesses is corroborated by that of other witnesses, who knew deceased more or less intimately, and saw her more or less frequently, between November, 1868, and her death, in 1875. Some of them testify to business transactions in which she showed memory and discernment and capability, and others to social occupations in which she manifested intelligence. On the other hand, there is a diversity of opinion, and the witnesses for the contestants more or less strongly speak of the impairment of her condition, mental and physical, from the first attack until

shortly before her death, and when, as they say, she was reduced to idiocy; but none of them speak to any permanent or settled condition; all of them recognize periods of improvement, and none of them contradict the express condition at the execution of the testamentary papers, as sworn to by the subscribing witnesses.

We see no reason to suspect the fairness of these witnesses; no improper influence is alleged; they have no relations which necessarily attach suspicion to them; their selection as attesting witnesses because of their relations with the deceased, their intelligence and their respectability, was natural and proper. It is a powerful circumstance, in this connection, that although she lived seven years after making the will and nearly two after the last codicil, and although she had undoubted periods of freedom from attack, she never expressed any dissatisfaction with what she had done. On the whole, the weight of evidence seems strongly to preponderate against the finding.

Where the proof shows facts evincing sufficient capacity in a testator to transact his ordinary business about the time of making a will, the opinions of witnesses as to a want of capacity are entitled to but little weight on the question. *Carpenter* v. *Calvert*, 83 Ill. 62.

It would seem, from all the evidence, that at the various periods of making the will and codicils, the testatrix was capable of ordinary business, and of acting rationally in the ordinary affairs of life; and this is sufficient to enable her to make a valid will. *Rutherford* v. *Morris*, 77 Ill. 397; *Meeker et al.* v. *Meeker*, 75 id. 266.

Where the verdict of a jury seems against the weight of the evidence, it becomes our duty to scrutinize the rulings of law, and the judgment in such case will be reversed for errors, if any, found in the instructions, calculated to mislead the jury as to the questions of fact involved.

The first instruction requires the jury to find the decedent capable at the several times when the instruments were exe-

cuted. This was calculated to mislead. If the jury were satisfied of her capability at any one time, it should have validated the act then done, and the preceding acts by that means republished.

The question of capacity involves the simple inquiry, whether the testatrix was or was not, at the time in question, able to understand and reasonably to transact the ordinary business of life. Was she able to buy and sell, and collect accounts? Did she understand the business in which she was engaged? Too much stress was laid on a comparison between her then and former business habits. Notwithstanding the change she might have undergone, she may still have had the capacity to make a will. The failure to transact business may be the result of physical ailment, not affecting the mind at all. After such comparison had been called to the attention of the jury, in the first instruction, as furnishing a circumstance for the jury to take into consideration, sufficient consideration was given to it. Its introduction more prominently in the second instruction was calculated to mislead.

The fifth instruction, in substance, assigns more weight to the testimony of nurses and attendants than to the opinions of the subscribing witnesses, which is erroneous. The jury, and not the court, must judge of the weight to be given to each part of the proofs. It also assumes that the witnesses spoken of as nurses and attendants testified as to the condition of deceased *at the times* of the execution of the will and codicils, when there is no such evidence.

The seventh instruction was inappropriate. The proof of periodical epileptic attacks, attended with convulsions, loss of consciousness, and the usual sequences of such attacks, or proof of temporary pneumonia supervening such an attack, with fever and delirium, is not such proof of insanity or lunacy as creates the presumption referred to in this instruction. The eighth instruction assumes that insanity had been proved, and is for that reason erroneous. It is not difficult to see how the jury were mistaken.

We think the legatees ought to have been made parties to this proceeding. The statute contemplates not merely the trial of the issue of law *devisavit vel non,* but also a settlement of this issue in such form as to bind all interested, and to settle the respective interests. There would be no object for the institution of this proceeding in chancery if such was not the intention.

After the probate of the will in the county court, it is allowed to any person interested, within three years, by his or her *bill in chancery,* to contest its validity, and upon the issue made up, it shall be tried by a jury *according to the practice* of the courts of chancery in similar cases. Rev. Stat. 1845, p. 537, sec. 6.

It is a rule in equity that all persons who have any substantial legal or beneficial interest in the subject matter in litigation, and who will be materially affected by the decree, *must* be made parties. *Atkins* v. *Billings,* 72 Ill. 597; *Moore* v. *Munn,* 69 id. 591. And there is no reason for relaxing this rule in proceedings like the present, especially as such proceeding is necessary within the time limited to avoid the binding and conclusive effect of the probate. If the contesting party should not be required to bring in all parties in interest, we should have the necessity for repeated bills, as each party in interest might desire to avoid the bar of the statute, and devise similar issues and trials to settle the one question. It is the better, and we think the necessary, practice that all parties in interest should be before the court.

This being so, the case falls within the other rule, that it is the duty of complainant to see that he has before the court all necessary parties; and where he takes a decree without making the necessary parties defendant, where they are disclosed to him, the decree will be reversed. *Hopkins* v. *Roseclare Lead Co.* 72 Ill. 373.

The decree will be reversed and the cause remanded.

*Decree reversed.*