In the Matter of the Probate of the Last Will and Testament of NEWELL CABLE, Deceased.

Surrogate's Court, Delaware County, November 6, 1924.

Wills — construction — revocation of codicil does not revoke will nor reinstate provisions revoked or affected by codicil — oral declaration of testator, after intentional destruction of codicil, does not revive original will and codicils — execution of subsequent codicils republishes and revives will as amended by prior codicils.

The revocation of a codicil to a will does not revoke the will to which it was attached, nor does it reinstate any of the provisions of the will revoked or affected by the destroyed codicil.

An oral declaration of a testator, after the intentional destruction by fire of the 9th codicil to his will, that he " had it back now " as he wanted it, did not revive

the original will and codicils in the respect in which they had been revoked by the destroyed codicil.

The proper execution of a codicil operates as a republication of the original will in so far as it is not altered or revoked by the codicil, and if the will which is thus republished had codicils added to it the presumption arises in the absence of a clear intent to the contrary, that the testator meant to ratify and confirm the will as amended by such codicils and the codicils also are republished.

Accordingly, the execution by the testator of the 10th and 11th codicils after the intentional destruction of the 9th codicil, re-established the will in the same condition as it was prior to the execution of the 9th codicil. The testamentary disposition of the testator's property, revived and republished by the 10th and 11th codicils, consisted not alone of the original will, but of that paper, together with all the instruments made a part of it by the execution of subsequent codicils.

PROCEEDING for the probate and construction of an alleged last will and codicils thereto.

Newell Cable, a resident of the town of Walton, in the county of Delaware, died on the 16th day of November, 1923:

John G. More and Mary A. Cable, the executor and executrix named as such in said will and codicils, duly presented said will with eleven codicils for probate as the testamentary disposition of the property of said decedent.

Objections were filed to the probate of said papers and the issues thus joined were tried before the surrogate and a jury. At the close of the case the court held there was no question of fact to go to the jury and reserved decision upon the questions of law involved.

The testator was survived by a number of nephews, nieces, grandnephews and grandnieces.

The will was executed January 15, 1912. Subsequently, commencing September 2, 1913, and extending to July 6, 1923, the testator executed various codicils. By the 1st, 2d, 6th, 7th, 9th, 10th and 11th codicils the testator revoked certain bequests to individuals named in each of said codicils stating that the reason for such revocation was that he had paid to such individuals the amount of such legacies. By the 2d paragraph of the 2d codicil he increased from $1,000 to $1,500 a bequest in trust to the children of his nephew Claude Cable. By the 8th codicil he revoked the appointment of one of the executors named in the original will and appointed in place of such executor one of the proponents, Mary A. Cable. By the original will the residuary estate was bequeathed to a niece Bertha W. Williams, or to her heirs. By the 3d codicil, dated April 28, 1914, the residuary clause of said will was revoked and the residuary estate was bequeathed equally to his nephews and nieces mentioned in the will and to their issue *per stirpes* with the exception of one nephew where the

Surrogate's Court, Delaware County, November, 1924.          [Vol. 123

share was bequeathed in trust for the benefit of his three children. By the 4th codicil, dated May 23, 1916, such disposition of the residuary estate was revoked and the residuary was bequeathed equally to six named church societies in the village of Walton, in the county of Delaware. By the 5th codicil, dated January 4, 1918, a bequest of $200 to each of two cousins was made and the bequest of one-sixth of the residuary estate to the First Baptist Church of Walton, N. Y., was revoked and such part of the residuary estate bequeathed to the Free Methodist Church of Walton, N. Y.

It appeared from the evidence that on the 3d day of February, 1923, at the home of the contestant Bertha W. Williams, the decedent made another codicil to his will, dated on that day, which revoked the disposition of his residuary estate and made bequests of $1,000 each to the churches named therein and divided the balance into thirteen parts, giving one part to each of eleven nephews and nieces named in the will, one part to the descendants of Lizzie Rock, a deceased niece, and one part to the children of his nephew Claude Cable. This codicil was executed prior to the 10th and 11th codicils offered for probate.

On February 20, 1923, the proponent John G. More, who was the attorney for the testator and had drawn his will and all of the codicils, was called to the residence of Mary Cable in the village of Walton by the testator. At that time the testator stated that he did not want to make any changes in his will; that he had been sick at that time and hardly realized what he was doing and that he wished Mr. More to get the papers. Mr. More went to his office, according to the evidence, and returned with the papers, gave the codicil executed February 3, 1923, to the testator, and the testator, in the presence of Mr. More and Mrs. Cable, stated he wanted it destroyed, " burned up," and the codicil was, in the presence of the testator, the witness More and Mary A. Cable, destroyed by burning it. It also appeared from the evidence that after the codicil was destroyed the testator stated in the presence of the witnesses and in the hearing of the witness Hoyt, that he " had it back now " as he wanted it.

Subsequently, on June 11, 1923, the 10th codicil and on July 6, 1923, the 11th codicil were executed by the testator. The 2d, 3d, 4th and 5th codicils each recite that they are a codicil to the testator's last will and testament bearing date the 15th day of January, 1912, and in the last paragraph provide: " And lastly, I ratify and confirm my said last will and testament and codicils thereto."

The 6th, 7th, 8th, 9th, 10th and 11th codicils recite that each

is a codicil to the last will and testament bearing date the 15th day of January, 1912, and in the last clause provide: "And I hereby ratify and confirm my said last will and testament in every respect," omitting the word "codicils."

*John G. More,* for the proponents.

*Arthur G. Patterson* of counsel, for proponents and attorney for the alleged residuary legatees under the will.

*A. Lindsay O'Connor,* for Bertha W. Williams and other contestants.

*Arthur E. Conner,* special guardian.

McNAUGHT, S. The facts in this proceeding are practically undisputed. Important and somewhat difficult questions of law, however, are presented by the issues joined. The decisive questions may be limited to three:

*First.* What was the effect on the testamentary disposition of testator's property by the destruction of the codicil executed February 3, 1923?

*Second.* Was the original will and the codicils as they existed prior to the destruction of the codicil of February 3, 1923, revived by the declaration of the testator at the time of the destruction of such codicil if such destruction revoked the original will and codicils?

*Third.* What was the effect upon the original will and existing codicils by the execution of the 10th and 11th codicils subsequent to the destruction of the codicil of February 3, 1923?

The revocation of a codicil to a will does not necessarily carry with it a revocation of the will to which it was attached, but the will is not restored to its original form simply by the revocation of the codicil. *Osburn* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 54; *Matter of Cunnion,* 201 id. 123; *Matter of Danklefsen,* 171 App. Div. 339

In the *Osburn Case, supra,* the testatrix executed a codicil which modified her will by making an additional bequest of $1,000 before providing for the disposition of her residuary estate    Subsequently the codicil was intentionally destroyed and revoked, but the will was preserved and admitted to probate. The Court of Appeals held that the will was entitled to probate, but as to the condition created by the destruction of the codicil said: "When the codicil modified the will by providing for an additional legacy before creation of the residuary estate it modified and revoked the will to that extent. This revocation was consummated at the

moment when the codicil was executed and published and thereafter the will was to that extent annulled. After this revocation had thus been consummated by the execution of the codicil the will could not be restored to its original form and tenor simply by the revocation of the codicil. A revocation of the revocation could not thus be accomplished. The effect of this is that the testatrix died intestate as to one thousand dollars."

This seems to be the unquestioned rule in New York and in other jurisdictions. *Cheever* v. *North,* 106 Mich. 390; 37 L. R. A. 561; *Osburn* v. *Rochester Trust & S. D. Co.,* 209 N. Y. 54; 46 L. R. A. (N. S.) 983.

It, therefore, appears that upon the destruction of the codicil of February 3, 1923, the will and codicils executed prior thereto were a valid testamentary disposition of the property of the testator, except that had he then died his residuary estate would have been undisposed of and passed as in case of intestacy. The statement of the testator after the destruction of the February 3, 1923, codicil was insufficient to revive the original will and codicils in the respect in which they had been revoked by the codicil of February 3, 1923. *Matter of Wear,* 131 App. Div. 875; *Matter of Kuntz,* 163 id. 125; *Matter of Stickney,* 31 id. 382; affd., 161 N. Y. 42.

The authorities bearing upon this question are reviewed at length in the opinion in *Matter of Stickney,* 31 App. Div. 382, which opinion was approved and adopted by the Court of Appeals in the same case (161 N. Y. 42).

The decisive question, therefore, is, did the execution of the 10th and 11th codicils revive and republish the original will of the testator with the codicils made a part thereof executed prior to February 3, 1923? This question has been most ably presented from the standpoint of all the interested parties and the authorities submitted by each have been carefully examined.

It is unquestionably true that the intention of the testator does not govern or control when the issue involves the due and legal execution of the testamentary disposition of property in accordance with the provisions of the Decedent Estate Law. The law has thrown certain safeguards around the testamentary disposition of property and imposed upon the individual the necessity of complying with the forms and requirements of the statute, in order that there may be safety, certainty and stability in disposing of property by testamentary act.

On the question of intention, there can be no reasonable dispute but what Newell Cable desired and intended his property should pass at his death in accordance with the provisions of his last will and testament and the existing codicils thereto. To hold that by

the execution of the 10th and 11th codicils the testator intended to revive his will and the disposition of his residuary estate by its terms and did not intend to revive and republish the amendments thereto as set forth in his various codicils, ascribes to the testator an intention which is not borne out by the evidence and infers that he had in mind a technical legal distinction which it is not reasonable to believe he ever considered. Nevertheless, the question is not what the testator intended, but what was the effect, under the law, of his acts.

The principle is well established that a codicil executed with the formalities required by the statute operates as a republication of a will in so far as it is not altered by such instrument. *Cook* v. *White*, 43 App. Div. 388; affd., 167 N. Y. 588; *Matter of Emmons*, 110 App. Div. 701; *Matter of Johnson*, 105 Misc. Rep. 451; affd., 188 App. Div. 954; *Brown* v. *Clark*, 77 N. Y. 369; *Matter of Campbell*, 170 id. 84; *Matter of Lawler*, 195 App. Div. 27.

The rule is so clearly laid down in the authorities cited that reference to the particular facts in each case is deemed unnecessary. There can be no question but what, by the execution of the 10th and 11th codicils, the will of the testator was republished.

The next question and the most important of all, is to determine what constituted the will of the testator which was republished by the execution of the 10th and 11th codicils. Did it consist solely of the original will, or of the original will, except as the same had been modified by codicils that did not affect the disposition of the residuary estate, or was the will of 1912 as revived by the execution of such codicils that instrument as it had been modified and actually disposed of the property of the testator with the various additions to it made from time to time in the nine codicils which had been made a part of it?

A codicil executed with the formality required by statute for the execution of wills operates as a republication of a will so far as it is not altered or revoked by the codicil and if the will which is thus republished had codicils added to it the presumption arises in the absence of a clear intent to the contrary, that the testator meant to ratify and confirm the will as amended by such codicils and the codicils also are republished. *Bloodgood* v. *Lewis*, 209 N. Y. 95, 103; *Van Cortlandt* v. *Kip*, 1 Hill, 590; *Brown* v. *Riggin*, 94 Ill. 560; *Manship* v. *Stewart*, 181 Ind. 299; *Crosbie* v. *MacDoual*, 4 Ves. Jr. 610; *Green* v. *Tribe*, L. R., 9 Ch. Div. 231; *Follett* v. *Pettman*, 23 id. 337; 1 Jarman Wills (5th Am. [R. & T.] ed.), chap. VII, § 5, pp. 358, 359; 1 Williams Exrs. (6th Am. ed.) chap. IX, § 2, p. 256; 1 Schouler Wills (6th ed.), § 689, p. 789.

In the case of *Brown* v. *Riggin, supra,* the testatrix had executed

a will and three codicils. A contest was instituted on the ground of unsoundness of mind. The jury was so instructed as to require it to find the testatrix capable at the several times when the instruments in question were executed. This was held to be error, the court, on appeal, holding that " If the jury were satisfied of her capability at any one time, it should have validated the act then done, and the preceding acts by that means republished."

In the case of *Manship* v. *Stewart, supra,* the proceeding involved the probate of a will with ten codicils. The Supreme Court of Indiana held specifically: " By the execution of a codicil to a will having prior codicils, the presumption arises, in the absence of a clear intent to the contrary, that testator meant to ratify and confirm the will as amended by such prior codicils, and such codicils are thereby republished."

In the case of *Crosbie* v. *MacDoual, supra,* the master of the rolls held all codicils are part of the will, saying (at p. 616): " It is perfectly true, that if a man ratifies and confirms his last will, he ratifies and confirms it with every codicil, that has been added to it."

In the case of *Green* v. *Tribe, supra,* decided by the Chancery Division in 1878, a testatrix by her will gave shares in her residuary estate to her nephew. By a codicil she revoked all devises and bequests to her nephew. By a second codicil she devised certain after-purchased property to the trustees of her will and confirmed her will. It was held that the second codicil did not revoke the first and that the after-purchased property went according to the will and first codicil together and not according to the will alone. Fry, J., in the course of the opinion in discussing the identical question here involved, said: " Assuming a testator to have made a will, to have made a first codicil modifying that will, to have made a second codicil describing his will by the date which the original instrument bore, and confirming that will, but observing an absolute silence with regard to the first codicil, what is the effect of the second codicil? Does it revive the first will as it originally stood, or does it confirm the original will as modified by the first codicil?

" The general principle I take to be clear. On the one hand, where a testator in a codicil uses the word ' will ' abstractedly from the context, it will refer to all antecedent testamentary dispositions which together make the will of the testator, and consequently where the testator by a codicil confirms in general terms his will or his last will and testament, the will, together with all codicils, is taken to have been confirmed. ' The will of a man,' said Lord Penzance in *Lemage* v. *Goodban,* L. R., 1 P. & D. 57, ' is the aggre-

gate of his testamentary intentions so far as they are manifested in writing, duly executed according to the statute.' "

In Schouler on Wills, *supra*, that well-recognized American authority upon this question, it is stated: " Inasmuch as the last will among various ones is the testator's true testament, republication revokes as of its date every former will inconsistent with that which is republished.   But if the will which is republished had codicils added to it, the presumption arises that the testator means to ratify and confirm the will as amended by its codicils, and not otherwise; though the true intent of the transaction should control, if discoverable."

The same doctrine is enunciated in Jarman on Wills, *supra*, as follows: " In applying the doctrine that a reference in a codicil to the prior of two wills as the actual will of the testator sets it up against a posterior will, it is necessary to bear in mind, that every codicil is a constituent part of the will to which it belongs; for in a general and comprehensive sense a will consists of the aggregate contents of all the papers through which it is dispersed; and, therefore, where a testator in a codicil refers to and confirms a revoked will, it is not necessarily to be inferred that he means to set up the will (using the word in its special and more restricted sense) in contradistinction to, and in exclusion of, any intermediate codicil or codicils which he may have engrafted on it.   He is rather to be considered as confirming the will with every codicil which may belong to it; and, accordingly in a case where a person made his will, and afterwards executed several codicils thereto, containing partial alterations of, and additions to the will; and by a further codicil, *referring to the will by date,* he changed one of the trustees and executors, and in all other respects expressly confirmed the will, this confirmation of the will was held not to revive the parts of it which were altered or revoked by the preceding codicils: Sir R. P. Arden, M. R., observing, that if a man ratifies and confirms his last will, he ratifies and confirms it with every codicil that has been added to it."

The specific question here involved does not seem to have been decided in the courts of this state except in so far as the principle upon which the issue must be determined is set forth in the authorities cited.   The Court of Appeals, however, in the case of *Bloodgood v. Lewis, supra,* referring to the rules to be applied to testamentary dispositions of property consisting of a will and codicils (at p. 103), says: "A codicil does not usually supersede the will as would an after-made will.   Its purpose is to alter, explain, qualify or revoke the will in the respects it defines.   It is a part of the will, and the two are to be read and executed as one entire instrument.   It may

revoke a prior gift, either expressly or by an inconsistent and repugnant disposition. An express revocation in one particular negatives, by implication, an intention to alter it in any other respect and an indubitable disposition in the will is not impliedly revoked by the codicil unless its repugnant provision is likewise indubitable, and then only in the precise degree and to the precise extent of its repugnancy. (*Taggart* v. *Murray*, 53 N. Y. 233; *Pierpont* v. *Patrick*, 53 N. Y. 591; *Austin* v. *Oakes*, 117 N. Y. 577; *Wetmore* v. *Parker*, 52 N. Y. 450; *Redfield* v. *Redfield*, 126 N. Y. 466; *Viele* v. *Keeler*, 129 N. Y. 190; *Crozier* v. *Bray*, 120 N. Y. 366.)"

It is, therefore, the conclusion of the court that the testamentary disposition of property revived and republished by the testator in the execution of the 10th and 11th codicils, consisted not alone of the paper denominated his will dated January 15, 1912, but of that instrument, together with all the instruments made a part of it and which, together, constituted his testamentary act.

The case of *Sloan* v. *Stevens*, 107 N. Y. 122, is not contrary to the conclusion reached herein. In that case the point involved was a question of construction and the court held that the general rule that a will and codicil were to be construed together as constituting one testamentary act did not apply where it appeared in the instrument from its peculiar provisions that the word "will" was not intended to cover or embrace the codicil

In *Matter of Campbell*, *supra*, upon which contestants rely, a will was executed. This will was revoked by a later will. Subsequently a codicil was attached to and made a part of the earlier will. The Court of Appeals held that the codicil and the earlier will as republished by it constituted the final testamentary disposition of the estate.

Considerable stress is laid upon the English case referred to in *Matter of Campbell*, *supra*, viz., *In the Goods of Reynolds*, L. R., 3 P. & D. 35. In that case a will was executed in 1866 and a codicil to it in 1871. Later in 1871 another will was executed revoking all previous wills and codicils. In 1872 a codicil was executed entitled a codicil to the will of 1866. Probate was decreed of the will of 1866 and the codicil of 1872, but it was held that the codicil made in 1871 was not revived. The court is unable to discover in that case the enunciation of any rule contrary to the conclusions reached herein. As in *Matter of Campbell*, *supra*, there was an intermediate will specifically revoking the former testamentary disposition. In the case at bar under the authorities the destruction of the codicil of February 3, 1923, only revoked the testamentary disposition of property of the testator herein to the extent that

disposition had been modified by the terms of the destroyed codicil and the conclusion reached here is not in conflict with the authority cited by the contestants, so the facts are not identical.

The discussion of numerous authorities submitted by the various parties is deemed unnecessary further than set forth herein. Careful consideration has been given to all of such authorities, but the court feels constrained to hold as outlined in this opinion.

A decree may be prepared admitting the will and codicils to probate as a valid testamentary disposition of the property of the testator. Such decree may be settled any Monday upon five days' notice.