Arthur E. Blyn, S.
In this accounting proceeding, the trustee seeks a determination as to the construction and effect of the will and codicils thereto.
The testator died on May 27, 1928, leaving a will executed January 28, 1926, a first codicil executed March 2, 1927, a second codicil executed September 20, 1927 and a third and final codicil executed May, 1928. The will and codicils were admitted to probate in this court July 13, 1928.
The principal questions for determination are whether or not the second codicil is to be given effect; the disposition of the one-fourth share of the residue and the final disposition of undistributed income.
Paragraph Ninth of the will provides:
"I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of what nature or kind soever, to the said executors and trustees, in trust, to invest in from time to time and keep it invested and pay the income to my daughter Harriet Gertrude outerbridge, upon her individual receipt, or apply the same to her use, for her life; and upon her death, I give, devise and bequeath the rest, residue and remainder of my estate to the descendants of my said daughter then living, to have and to hold it to them, their heirs, executors, administrators and assigns absolutely forever, and to be divided among them per stirpes and not per capita.
"But if she shall leave no descendant living at her death, I give one-quarter of such rest, residue and remainder to my *688 nephew, Samuel R. Outerbridge, or to his descendants if he be not then living, to belong to him or them absolutely.
"And I give the other three-quarters to the trustees hereunder, in trust, to invest them from time to time and keep them invested and pay the income to my daughter, Catharine louise mumford, during her life, and upon her death to pay over the principal thereof to her children and the descendants of any deceased child or children, to belong to them absolutely, and to be divided among them per stirpes.”
The first codicil refers to the death of the decedent’s wife, Elizabeth, and revokes paragraph Seventh of the will. The second codicil refers to the death once again of his wife, Elizabeth, and of the death of his daughter, Catharine, revokes Paragraphs Fifth and Sixth of the will and then provides as follows: "I revoke so much of paragraph Ninth as gives three quarters of the rest, residue and remainder of my estate, in the contingency therein mentioned to my said daughter Catharine, being the last seven lines of said paragraph numbered Ninth. And in stead thereof, if as there stated, my daughter Harriet Gertrude shall leave no descendant living at her death, I give said three quarters to the Trustees, in trust, to invest them and keep them invested, holding said three quarters in three separate trust funds, and to pay the income of said funds to, or apply it to the use of, the three children of my daughter Catharine, each child to receive the income from one of said funds, for the respective lives of said three children; and upon the death of each child to pay the principal of the trust fund held for the benefit of said child, to his or her descendants; or if he or she shall leave no descendant living at that time, then to pay said principal sum to the beneficiaries then living of the remaining trust funds, to belong to said descendants or said beneficiaries absolutely and to be divided per stirpes.”
The third codicil modified the will with respect to the appointment of his fiduciaries and directs in article Second as follows: "Except as herein modified, I ratify, reaffirm and republish my will and first codicil thereto, and declare that they and this codicil shall constitute my Last Will and Testament.”
It is contended, on behalf of the children of Catharine, that the third codicil, by republishing only the will and the first codicil, revoked the second codicil and revived their remainder interest to the trust principal in accordance with paragraph *689 Ninth of the will as it originally stood. On the other hand, the guardian ad litem contends that the second codicil must be given effect because its vitality may not be "collaterally attacked”, for the reason that the propounded instruments were duly admitted to probate. In that regard, while it is true that a probate decree, which construes or interprets any portion of a will, is conclusive as to the rights of all persons interested in the estate, the mere admission of the second codicil to probate (not then construed or interpreted) is no bar to a construction at this time (SCPA 1420, subd 4). (Cf. Matter of Mendel, NYLJ, Feb. 25, 1975, p 14, col 1.)
When a will is revoked by a second will, and, subsequently, a codicil to the first will is executed, the second instrument is revoked and the original will may be revived even though the codicil contains no express language of revocation. (Matter of Campbell, 170 NY 84; Matter of Klein, 177 Misc 555; Matter of Kerner, 14 Misc 2d 545; Matter of Theaman, 65 Misc 2d 750.) In Matter of Van Ingen )183 Misc 281, 286) Surrogate Delehanty referred to a proposition established by the court of Appeals that "the mere combination of a will and of a codicil referring to it by date does not necessarily operate to cancel codicils intervening between the date of the will and the date of the codicil which so mentioned it. The affirmance in the Cable case [123 Misc 894, affd 213 App Div 512, affd 242 NY 510] suffices to make clear that in the Campbell case (supra) the court was not laying down a rule of law to the effect that an express reference to a will by its date requires a holding that only it and the latest of the codicils so referring to it are to be deemed the true will of deceased. The case means that the intention of the testator is to be sought for and when ascertained is to be made effective.”
It has been said that the first, safest and most urgent rule of testamentary construction is the one that says that whenever possible, the testament is to be construed in accord with the actual intent of the testator, including his presumed intent to dispose of his entire estate by the will. (Matter of Dammann, 12 NY2d 500.) That intention must not be drawn from a single word or phrase but from a sympathetic reading of the will as a whole and in the light of all the facts and the circumstances under which it was drafted. (Matter of Fabbri, 2 NY2d 236; Matter of Larkin, 9 NY2d 88; Matter of Flyer, 23 NY2d 579; Matter of Kosek, 31 NY2d 475.)
It is apparent from an examination of the will that the *690 testator formulated a testamentary plan designed to keep legacies in trust for as long as legally possible. Since the testator was obviously well aware of the death of his daughter, Catharine, at the time he executed the third codicil to his will, it must be presumed that he also knew that a revocation of the second codicil would result in Catharine’s children (his grandchildren) taking the corpus imediately upon the death of the original life beneficiary. It cannot be ignored that throughout the will, the testator prefaced his gift with remarks explaining why he was making that particular gift. In the codicils, as well, the testator carefully furnished a reason for each modification. Thus, the first codicil make certain adjustments while taking into account the death of his wife. Likewise,the second codicil deals with the predecease of his daughter, Catharine, and creates the trusts for his grandchildren. In view of the painstaking lengths gone to by the testator to explain his deviations from the original testamentary scheme, it is not reasonable to assume that he would have done no more than imply a desire to make as radical a change in that plan as the revival of paragraph Ninth as it originally stood. If it were true that the testator intended to revoke the second codicil, he would certainly have effected it by a writing, if not a separate codicil, then at least an article more descriptive than article Second of the third codicil which is no more than a "boiler plate” reaffirmation of the amended will. When it appears, as it does in the instant case, that the cause of an ambiguity in a will was no more than the faulty transcription of a stock phrase, it may be reasonably inferred that what was omitted were the few words needed to include the second codicil in the reaffirmation, rather than the entire sentence needed to revoke it explicitly.
Accordingly, the second codicil will be given effect and the two surviving children of decedent’s daughter, Catharine, have an income interest in the trusts. The court determines that the share of the residue, which would have been held for the benefit of Catharine’s daughter, Elizabeth K. Mumford, who predeceased the life beneficiary, without issue, is payable to the said surviving children of Catharine pursuant to the terms of the codicil. (Cf. Matter of Fordham, 235 NY 384.)
The next matter to be construed involves the disposition of the one-fourth share of the residue which under article Ninth of the will is given to the testator’s "nephew, Samuel R. *691 Outerbridge or to his descendants, if he be not then living, to belong to him or them absolutely”.
Samuel R. Outerbridge survived the testator but not the original life beneficiary, Harriet Outerbridge, and at the time of her death, his descendants include his two children and their issue. These two children seek a per stirpital distribution, while the guardian ad litem on behalf of their children requests a per capita distribution. Distribution of a decedent’s property as "per capita” or "per stirpital” was controlled by common law until April 30, 1921, when section 47-a of the Decedent Estate Law was enacted, under common law, the term issue was interpreted as applying to the distribution per capita to all descendants in whatever degree they were related to the decedent. (Matter of Woodcock, 191 Misc 851; Matter of Park, 158 Misc 866.) Under section 47-a of the Decedent Estate Law, however, a devise or bequest to issue of the decedent or of another, if in equal degree of consanguinity to their common ancestor take per capita but if in unequal degree, per stirpes unless a contrary intention is expressed in the will. These provisions have been incorporated into EPTL 2-1.2 which is a re-enactment of section 47-a of the Decedent Estate Law. There is no doubt that had the testator made the "gift over” to "issue”, the statute would supersede the rule at common law that such a limitation gives rights to a per capita distribution and by the operation of the statute, the gift would be disposed of per stirpes. However, the testator used the word "descendant”, and it has been successfully argued (cf. Matter of Gardiner, 20 Misc 2d 722; Matter of Walbridge, 192 Misc 746; Matter of Burke, 178 Misc 684), that the statute is to be strictly construed and its operation limited to the term "issue” because it amends a well-settled rule at common law.
Nonetheless, the Surrogates of this county have consistently held that since a distribution to "descendant” was in legal effect equivalent to a distribution to "issue” at common law (cf. Hamlin v Osgood, 1 Redf 409 [1862] and Barstow v Goodwin, 2 Bradf 413 [1853], section 47-1 of the Decedent Estate Law mandates a per stirpital distribution to "descendants” as well unless it is clear that this would not be in accordance with the wishes of the testator. (Matter of Palmer, 38 Misc 2d 553; Matter of Schoellkopf, 21 Misc 2d 564.) Consequently, this court could properly order a per stirpital distribution as long as the will offered no hint of an intention to do otherwise. (Ferrer v Pyne, 81 NY 281, 284; Matter of Farmers’ Loan & *692 Trust Co., 213 NY 168.) In the case at bar, it is the court’s opinion, drawn from other parts of the will, that the testator intended a per stirpital distribution of this part of the residue.
In Matter of Young (62 Misc 2d 86, 94-95), the court in a somewhat similar situation said:
"2. Where the direction for distribution, is to 'issue’ or 'descendants’ in substitution for a disposition to a common ancestor (viz: 'the descendants — to take the share such deceased one would take if living’), such substitutionary direction imports per stirpital distribution (2 Davids, New York Law of Wills, § 673). This is a 'fairness’ rule.
"3. A contrary intention may also be 'glimpsed’ from this otherwise carefully drawn will, from the failure of the testator to use the specific direction 'per capita’ or similar terms in equal parts’ or 'share and share alike’ (cf. Estate of Place, N.Y.L.J., June 18, 1969, p. 18, col. 6).”
In the light of all of the foregoing, a per stirpital distribution is directed.
The remaining question in this proceeding concerns the final disposition of the sum of $19,715.12 which was earned by the trust for the benefit of Harriet Gertrude Outerbridge and never paid out to her by the trustee although parts of it had accrued from as early as 1954.
The testator bequeathed "all the rest, residue and remainder of my estate * * * to the * * * trustees * * * to invest it from time to time and keep it invested and pay the income to my daughter Harriet Gertrude Outerbridge, upon her individual receipt or apply the same to her use, for her life; and upon her death, I give * * * the rest, residue and remainder of my estate to [her] descendants”.
It is contended by the respondents, in essence, that the above trust instructions require that income may only be receipted by or applied to the use of Harriet Gertrude and that no other form of distribution to her is permissible; that the accumulation resulting from the trustee’s failure to pay out or apply the income it presently holds during Harriet’s live tenancy is invalid under section 16 of the Personal Property Law (now EPTL 9-2.1), the "rule against accumulations”, because it is not for the benefit of a minor; and that the accumulation is thus payable to the remaindermen and not to Harriet’s estate by virtue of section 63 of the Real Property Law (now EPTL 9-2.3) which declares that "When, in *693 consequence of a valid limitation of an expectant estate, there is a suspension of the power of alienation, or of the ownership, during the continuance of which the rents and profits are undisposed of, and no valid direction for their accumulation is given, such rents and profits shall belong to the persons presumptively entitled to the next eventual estate.” It has been held, however, that the operation of the statute is triggered when the following conditions are fulfilled: ”[FJirst, a valid limitation of an expectant estate involving suspense of power of alienation or ownership, second, a failure to direct the disposition of the full income during such period, and third, no valid direction for accumulation.” (Matter of Shupack, 158 Misc 873, 880; see, also, Hawthorne v Smith, 273 NY 291.)
The crux of the respondent’s argument is an interpretation of the will making the receipt or application of the income mandatory. It is the contention of the petitioner, however, that failing this, there can be no instruction valid or invalid, to make an accumulation, nor can there be any income that is not fully disposed of. The court is not persuaded that the content of the will or the general testamentary plan compels construction of the limitation in question in a way which would leave the trustee no recourse other than the accumulation of all income not receipted or applied. The words, "upon her individual receipt or apply the same to her use” do not import a limitation on the absoluteness of the gift. A broad distinction exists between ownership of income held in trust and the right to receive it. (Matter of Hoyt, 116 App Div 217, affd 189 NY 511.)
The cases have generally held that where discretion is vested in the trustee to apply income, the retention of part of the income by him does not constitute a void accumulation. The unexpended balance continues to be the property of the beneficiary and at his death passes by will or intestacy. (Bloodgood v Lewis, 209 NY 95; Hamilton v Drogo, 241 NY 401; Hill v Guaranty Trust Co., 163 App Div 374; Matter of Post, 145 Misc 794; Matter of Littman, 165 Misc 285.)
Since it is feasible to interpret the nature of the income interest in a way which does not violate the rule against accumulations, such an interpretation will be given effect. (Hawthorne v Smith, 273 NY 291, supra; Matter of Shupack, 158 Misc 873, supra; Matter of Hayes, 263 NY 219; Matter of Birdsell, 271 App Div 90; Matter of Gibbons, 61 Misc 2d 790; *694 Matter of Nield, 42 Misc 2d 1010.) In Matter of Hoyt (supra, p 219), the court stated that a construction "which imputes to the testator an intent to make an illegal disposition of a portion of his property * * * is not to be presumed”. In Hoyt and the numerous cases which have followed it (cf. Morris v Morris, 272 NY 110; Hill v Guaranty Trust Co., supra) the construction which gives maximum validity was chosen even where an explicit instruction to accumulate had to be excised and it was clear that not all income had been disposed of. In the case at bar, where the instruction to accumulate and the failure to dispose of the full income are at best implied, it follows, a fortiori, that such a construction will not be made.
Accordingly, and in view of all the foregoing, the court determines that the income presently in the hands of the trustee is accrued income payable to the income beneficiary’s estate. (Matter of Watson, 262 NY 284; EPTL 11-2.1 [formerly Surrogate’s Ct Act § 204]).